UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. SMITH, | No. C 04-2358 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TOM L. CAREY, Warden, | |
| Respondent. | |

**INTRODUCTION**

Michael D. Smith, a California prisoner incarcerated at California State Prison - Solano, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

On two successive days in March 1999, Smith and a friend stole computer equipment from a law office. As they were trying to leave the premises on the second day, they were confronted by a security guard, who blocked Smith's truck in the parking lot. Smith fled on foot, but later was arrested in the State of Washington.

Following a no contest plea in Santa Clara County Superior Court, Smith was convicted of three counts of second degree burglary. He also admitted he had suffered four prior prison terms and two prior "strike" convictions.[1] In exchange, the district attorney dismissed three counts of petty theft with a prior theft-related conviction and one count of receiving stolen property. Smith moved to have one or both prior strike convictions dismissed in the interests of justice, under section 1385. The court denied the motion to dismiss either prior strike conviction, but did reduce count one to a misdemeanor and struck the terms for the prior prison term enhancement. Smith was sentenced to two concurrent terms of 25 years to life and a concurrent term of one year for the misdemeanor.

Smith unsuccessfully appealed. The California Court of Appeal affirmed the judgment of conviction and denied Smith's petition for writ of habeas corpus. The California Supreme Court denied the petition for review.

Smith's federal habeas petition raises a single claim of ineffective assistance of counsel. Smith claims that counsel incorrectly advised him that the sentencing judge would strike one of his prior convictions and sentence him to somewhere between five and thirteen years, rather than the twenty-five years to life sentence the judge actually imposed. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. The matter is now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

---

[1] The existence of the two prior "strike" convictions meant that Smith was subject to sentencing under California's Three Strikes Law. The Three Strikes Law consists of two almost identical statutory schemes – one adopted by initiative and the other passed by the legislature -- that allow harsher sentences for defendants who are convicted of felonies and have previously been convicted of one or more serious or violent felonies. See Cal. Penal Code §§ 667, 1170.12.

2

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

1 or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas
2 court making the "unreasonable application" inquiry should ask whether the state court's application
3 of clearly established federal law was "objectively unreasonable." Id. at 409.

4 The standard of review under AEDPA is somewhat different where, as here, the state court
5 gives no reasoned explanation of its decision on a petitioner's federal claim. In such a case, a
6 review of the record is the only means of deciding whether the state court's decision was
7 objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal
8 court should conduct "an independent review of the record" to determine whether the state court's
9 decision was an unreasonable application of clearly established federal law. Id. In considering
10 such a case, no deference under §2254(e) to factual findings is required because a summary
11 decision by a state court does not "implicitly" make any factual findings in support of the decision.
12 See Fisher v. Roe, 263 F.3d 906, 913 (9th Cir. 2001) (refusing to infer factual findings from state
13 court summary denial of habeas petition).

**DISCUSSION**

16 Smith claims that he received ineffective assistance of counsel in that his lawyer
17 incorrectly advised him that the sentencing judge would strike one of his prior convictions and
18 sentence him to somewhere between five and thirteen years, rather than the longer 25 years to life
19 sentence the judge actually imposed. The California Court of Appeal and California Supreme
20 Court rejected the claim, but neither discussed it in a reasoned opinion.

21 The Sixth Amendment right to counsel guarantees not only assistance, but effective
22 assistance, of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). A defendant who
23 enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent
24 character of the guilty plea by showing that the advice he received from counsel was not within the
25 range of competence demanded of attorneys in criminal cases. See Hill v. Lockhart, 474 U.S. 52,
26 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973). A defendant must satisfy the two-part
27 standard of Strickland, 466 U.S. at 687, i.e. that counsel's performance was deficient and that the

deficient performance prejudiced his defense, and establish the prejudice requirement by showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See Hill, 474 U.S. at 57-59; Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986).

The record before this court is the same one that was before the California Court of Appeal and California Supreme Court: the transcripts of the plea colloquy and sentencing as well as declarations from Smith, his wife, his two sisters, and his appellate counsel concerning the statements made by trial counsel who advised on the plea. Upon due consideration, this court reaches the same conclusion the state courts did and rejects the ineffective assistance of counsel claim. As will be seen below, the transcripts flatly contradict the declarations from Smith and his family, clearly showing there was no promise regarding the sentence.

Smith states in his declaration that on several occasions before he pled no-contest, attorney Jacobs "told me that, if I did so, Judge Kim would not sentence me to life imprisonment. [¶] Ms. Jacobs said that Judge Kim was a fair judge and that she would strike one of my strike convictions and would sentence me to somewhere between five and thirteen years imprisonment. On one occasion, Ms. Jacobs told me, 'Michael, you're not going to get life.'" Petition, Exh. 1 (Michael Smith Decl.), ¶¶ 3-4.

Smith offers three declarations from his family stating they also heard the false representations. His sister, Elizabeth Smith, states that defense counsel told her "she could guarantee [Smith] would 'not do more than ten years'" if he pled guilty. (Petition, Exh. 2). Smith's wife, Rechelle Smith, states that defense counsel told her that Smith "would do ten to fifteen years," but "won't do 25 years to life." (Petition, Exh. 3, ¶3). Smith's other sister, Susan Smith, claims defense counsel told her "both of his prior strike convictions would be dropped and the judge would not give [Smith] a life sentence." Petition, Exh. 4, ¶ 3). Susan Smith additionally declares that defense counsel at one point told her Smith would receive a five to seven year sentence, and at another point that he would probably receive a ten to fifteen year sentence.

The transcript of the plea hearing flatly rebuts Smith's claims regarding the representations

1 about his sentence. The following colloquy took place at the change-of-plea hearing:

2 [THE COURT:] Mr. Smith, I'm going to ask you a lot of questions. Listen carefully. If you don't understand something, just stop me. You can ask me or you can ask your lawyer. Okay? The -- you're going to plead guilty or no contest to three charges. All of them are felonies, and all of them are burglaries of the second degree. In other words, burglaries of a business rather than a residence. You will also be admitting a number of priors, prior convictions. Two of them are what's commonly known as strike priors, which makes this a three strikes case. The strike priors are two robberies that you suffered in Alameda County. And you will also be admitting four prison priors. Those are also felony convictions for which you served a prison sentence. And they are a burglary in Contra Costa County, a burglary in San Francisco County, another burglary in Contra Costa County and then, again, that robbery in Alameda County. Do you understand the nature of these charges?

10 [SMITH:] Yes.

11 [THE COURT:] Have you discussed the facts and the possible defenses to the charges with your attorney?

13 [SMITH:] Yes, ma'am.

   [THE COURT:] *And do you understand that the maximum time you could be sentenced to, if I don't strike any of the prior convictions, then the maximum is 79-years-to-life in state prison. Do you understand that?*

16 [SMITH:] *Yes, ma'am.*

17 [THE COURT:] And it could be less, it can't be more but -- obviously can't, but *your attorney, of course, going is going to make a motion at the time of sentencing to strike some of the prior convictions so it may become less, but that's not a promise. Do you understand that?*

19 [SMITH:] Yes, ma'am.

20 [THE COURT:] And probation is not an option in this case. It will be a prison sentence. It just depends on how long. But the maximum is 79-years-to-life. Do you understand that?

22 [SMITH:] Yes, ma'am.

23 [THE COURT:] And --

   THE COURT: Is it 85 percent or -- he has to serve -- I always get confused.

   [PROSECUTOR:] No. It -- if he were -- if you were to strike a prior, it will be 80 percent. *If you don't strike a prior, it's -- a minimum of 25 calendar years in addition to an indeterminate sentence.*

6

| | | |
|---|---|---|
| 1 | [THE COURT:] | Do you understand that? |
| 2 | [SMITH:] | Yes, ma'am. |

3 RT 43-45 (emphasis added).

| | | |
|---|---|---|
| 4 | [THE COURT:] | Has anyone made any promises to you other than what we promised -- I promised you here today? And I didn't promise you very much. The only thing we promised is that we -- the district attorney is going to dismiss some of the charges, but it will still leave three of the burglaries and we really didn't promise you anything other than life in state prison. *Has anyone promised you anything else?* |
| 5 | | |
| 6 | | |
| 7 | | |
|   | [SMITH:] | *No, ma'am.* |
| 8 | [THE COURT:] | All right. You understand the -- *your attorney is going to make a motion and try to get me to dismiss or to strike some of the prior convictions. But that's not a promise that I will do that. You understand that?* |
| 9 | | |
| 10 | | |
| 11 | [SMITH:] | *Yes, ma'am.* |
| 12 | [THE COURT:] | *So when you come in for sentencing and I say no, I'm not striking anything, I'm not dismissing anything, you can't just turn around and say, gee, that's not what we agreed upon and I want to withdraw my plea. It's not going to work. Do you understand that?* |
| 13 | | |
| 14 | | |
| 15 | [SMITH:] | *Yes, ma'am.* |

16 RT 52-53 (emphasis added).

17     Smith also submitted a declaration from his appellate counsel, who recounted a

18 conversation with attorney Jacobs. Smith's appellate counsel declared that attorney Jacobs denied

19 that she had misled Smith about the terms of the offer and denied that she made any promises to

20 Smith. Attorney Jacobs viewed Smith's case as a "close case" regarding whether one of the prior

21 strike convictions would be dismissed and said she had told Smith she hoped the court would "go

22 our way" but did not promise that Smith would not receive a sentence under the Three Strikes Law.

23 (Petition, Exh. 5, ¶ 3).

24     Smith does not reconcile the statements of his former counsel or Smith's own testimony

25 at the plea colloquy with the declarations from him and his family. He does not explain why he

26 agreed to the plea and told the court that no promises had been made if he was in fact promised that

27 the judge would "go his way," strike at least one of the prior convictions, and give him a

28

determinate sentence. The declarations from Smith's family members also are not persuasive. Smith's sisters stated they had attended all the court sessions (and his wife stated she had attended some of the court appearances) and all claim to have been shocked when Smith received a 25 years to life sentence. Like Smith himself, none of his family members explain how they could have heard the plea colloquy – in which Smith repeatedly acknowledged no promise had been made to him and he was subject to a sentence of 79 years to life – and nonetheless been shocked when a 25 years to life sentence was imposed. Moreover, there is no explanation of why his sister Susan pleaded with the court at the Romero hearing not to sentence Smith to life imprisonment if she was under the impression he had been promised a sentence of 5-7 years or 10-15 years. Compare RT 69-70 with Petition, Exh. 4, ¶ 3. Finally, even if believed, the declarations from the family members would be of limited value and could at most corroborate Smith's declaration because each of the family-member declarations discusses what attorney Jacobs told that family member rather than what attorney Jacobs told Smith himself.

During the plea colloquy Smith repeatedly acknowledged that no promises had been made and specifically denied that any promise to dismiss a prior strike conviction had been made. Smith also spoke at his Romero hearing--i.e., the hearing to determine whether any prior conviction would be dismissed--and did not suggest that any promises had been made. Smith also did not object or protest at the sentencing hearing when the court denied his motion to dismiss his prior strike convictions and sentenced him to 25 years to life under three strikes. The record reveals that, in addition to the plea colloquy, Smith and his family acknowledged that he might receive a life sentence. Several letters were submitted for the court to consider during sentencing. Two of the letters from Smith's family acknowledged that Smith might receive a life sentence under the Three Strikes Law. One letter stated, "if they give him 3 serikes . . . thay don't have to tack he's life if he did not do nothing." CT 355 (errors in original). Another family member wrote, "people have been telling me you will ~~prombly~~ get life or 20 to 30 years in jail." CT 266 (strikeout in original). Family members were also allowed to address the judge during the Romero hearing. Smith's sister Susan stated, "All I want to say is instead of locking my brother up for the rest of

1  his life, please just give him a chance. . . " and "[d]on't lock him up for life, please, Your Honor."
2  RT 69-70.

3        The foregoing demonstrates that the sentence imposed was no greater than that to which
4  Smith agreed. The trial court specified and Smith agreed that he could be sentenced to a maximum
5  term of 79 years to life. The trial court specifically alerted Smith to the fact that although his
6  attorney would "try" to persuade the judge to dismiss one of Smith's priors, the judge made no
7  promises that she would do so. RT 53.

8        Smith offers no persuasive evidence that supports his assertions that he was misled by
9  counsel. Smith's declarations are insufficient to rebut the "strong presumption of verity" afforded
10 his solemn declarations in open court. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see
11 also Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir 1999) (finding habeas petitioner's alleged
12 "subjective" impressions insufficient to undermine his own statements at the plea colloquy);
13 Slevin v. United States, 71 F.Supp.2d 348, 356-58 (S.D.N.Y. 1999) (requiring some "objective
14 evidence" to support petitioner's self-serving allegations because convicted prisoner faces
15 tremendous incentives to fabricate allegations of misconduct in an attempt to avoid incarceration).
16

17       The record shows that Smith was accurately informed of the 79 years to life maximum
18 sentence that the court could impose. Smith's own statements in court show he understood he
19 could receive a 79 years to life sentence. The court advised Smith that if none of his strikes were
20 dismissed he could not decide "'that's not what we agreed upon and I want to withdraw my plea.'"
21 RT 53. Smith agreed, yet this is precisely what Smith has done in his habeas petition. When he
22 pled no contest, Smith acknowledged that he faced up to a life sentence and that there were no side
23 promises or threats prompting him to plead no contest. He now provides no explanation for the
24 discrepancy between the record and his allegations. A "disappointed hope for leniency does not,
25 without more, render a guilty plea invalid." Conley v. United States, 407 F.2d 45, 47 (9th. Cir.
26 1969).

27       Smith has not shown deficient performance by counsel and no prejudice resulted from
28

counsel's advice. Having made an independent review of the record, this court concludes that the state courts' rejection of Smith's claim was not an unreasonable application of clearly established federal law. See Himes v. Thompson, 336 F.3d at 853. Smith is not entitled to the writ.

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July _5__, 2005

SUSAN ILLSTON
United States District Judge

*Susan Illston* (signature)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. SMITH, | No. C 04-2358 SI (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TOM L. CAREY, Warden, | |
| Respondent. | |

**INTRODUCTION**

Michael D. Smith, a California prisoner incarcerated at California State Prison - Solano, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

On two successive days in March 1999, Smith and a friend stole computer equipment from a law office. As they were trying to leave the premises on the second day, they were confronted by a security guard, who blocked Smith's truck in the parking lot. Smith fled on foot, but later was arrested in the State of Washington.

Following a no contest plea in Santa Clara County Superior Court, Smith was convicted of three counts of second degree burglary. He also admitted he had suffered four prior prison terms and two prior "strike" convictions.[1] In exchange, the district attorney dismissed three counts of petty theft with a prior theft-related conviction and one count of receiving stolen property. Smith moved to have one or both prior strike convictions dismissed in the interests of justice, under section 1385. The court denied the motion to dismiss either prior strike conviction, but did reduce count one to a misdemeanor and struck the terms for the prior prison term enhancement. Smith was sentenced to two concurrent terms of 25 years to life and a concurrent term of one year for the misdemeanor.

Smith unsuccessfully appealed. The California Court of Appeal affirmed the judgment of conviction and denied Smith's petition for writ of habeas corpus. The California Supreme Court denied the petition for review.

Smith's federal habeas petition raises a single claim of ineffective assistance of counsel. Smith claims that counsel incorrectly advised him that the sentencing judge would strike one of his prior convictions and sentence him to somewhere between five and thirteen years, rather than the twenty-five years to life sentence the judge actually imposed. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. The matter is now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

---

[1] The existence of the two prior "strike" convictions meant that Smith was subject to sentencing under California's Three Strikes Law. The Three Strikes Law consists of two almost identical statutory schemes – one adopted by initiative and the other passed by the legislature -- that allow harsher sentences for defendants who are convicted of felonies and have previously been convicted of one or more serious or violent felonies. See Cal. Penal Code §§ 667, 1170.12.

2

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The standard of review under AEDPA is somewhat different where, as here, the state court gives no reasoned explanation of its decision on a petitioner's federal claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Id. In considering such a case, no deference under §2254(e) to factual findings is required because a summary decision by a state court does not "implicitly" make any factual findings in support of the decision. See Fisher v. Roe, 263 F.3d 906, 913 (9th Cir. 2001) (refusing to infer factual findings from state court summary denial of habeas petition).

**DISCUSSION**

Smith claims that he received ineffective assistance of counsel in that his lawyer incorrectly advised him that the sentencing judge would strike one of his prior convictions and sentence him to somewhere between five and thirteen years, rather than the longer 25 years to life sentence the judge actually imposed. The California Court of Appeal and California Supreme Court rejected the claim, but neither discussed it in a reasoned opinion.

The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance, of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. See Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973). A defendant must satisfy the two-part standard of Strickland, 466 U.S. at 687, i.e. that counsel's performance was deficient and that the

4

1  deficient performance prejudiced his defense, and establish the prejudice requirement by showing
2  that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty
3  and would have insisted on going to trial. See Hill, 474 U.S. at 57-59; Iaea v. Sunn, 800 F.2d 861,
4  864-65 (9th Cir. 1986).

The record before this court is the same one that was before the California Court of Appeal and California Supreme Court: the transcripts of the plea colloquy and sentencing as well as declarations from Smith, his wife, his two sisters, and his appellate counsel concerning the statements made by trial counsel who advised on the plea. Upon due consideration, this court reaches the same conclusion the state courts did and rejects the ineffective assistance of counsel claim. As will be seen below, the transcripts flatly contradict the declarations from Smith and his family, clearly showing there was no promise regarding the sentence.

Smith states in his declaration that on several occasions before he pled no-contest, attorney Jacobs "told me that, if I did so, Judge Kim would not sentence me to life imprisonment. [¶] Ms. Jacobs said that Judge Kim was a fair judge and that she would strike one of my strike convictions and would sentence me to somewhere between five and thirteen years imprisonment. On one occasion, Ms. Jacobs told me, 'Michael, you're not going to get life.'" Petition, Exh. 1 (Michael Smith Decl.), ¶¶ 3-4.

Smith offers three declarations from his family stating they also heard the false representations. His sister, Elizabeth Smith, states that defense counsel told her "she could guarantee [Smith] would 'not do more than ten years'" if he pled guilty. (Petition, Exh. 2). Smith's wife, Rechelle Smith, states that defense counsel told her that Smith "would do ten to fifteen years," but "won't do 25 years to life." (Petition, Exh. 3, ¶3). Smith's other sister, Susan Smith, claims defense counsel told her "both of his prior strike convictions would be dropped and the judge would not give [Smith] a life sentence." Petition, Exh. 4, ¶ 3). Susan Smith additionally declares that defense counsel at one point told her Smith would receive a five to seven year sentence, and at another point that he would probably receive a ten to fifteen year sentence.

The transcript of the plea hearing flatly rebuts Smith's claims regarding the representations

5

1  about his sentence. The following colloquy took place at the change-of-plea hearing:

2  [THE COURT:]  Mr. Smith, I'm going to ask you a lot of questions. Listen carefully. If you don't understand something, just stop me. You can ask me or you can ask your lawyer. Okay? The -- you're going to plead guilty or no contest to three charges. All of them are felonies, and all of them are burglaries of the second degree. In other words, burglaries of a business rather than a residence. You will also be admitting a number of priors, prior convictions. Two of them are what's commonly known as strike priors, which makes this a three strikes case. The strike priors are two robberies that you suffered in Alameda County. And you will also be admitting four prison priors. Those are also felony convictions for which you served a prison sentence. And they are a burglary in Contra Costa County, a burglary in San Francisco County, another burglary in Contra Costa County and then, again, that robbery in Alameda County. Do you understand the nature of these charges?

10 [SMITH:] Yes.

11 [THE COURT:]  Have you discussed the facts and the possible defenses to the charges with your attorney?

12 [SMITH:] Yes, ma'am.

13 [THE COURT:]  *And do you understand that the maximum time you could be sentenced to, if I don't strike any of the prior convictions, then the maximum is 79-years-to-life in state prison. Do you understand that?*

16 [SMITH:] *Yes, ma'am.*

17 [THE COURT:]  And it could be less, it can't be more but -- obviously can't, but *your attorney, of course, going is going to make a motion at the time of sentencing to strike some of the prior convictions so it may become less, but that's not a promise. Do you understand that?*

19 [SMITH:] Yes, ma'am.

20 [THE COURT:]  And probation is not an option in this case. It will be a prison sentence. It just depends on how long. But the maximum is 79-years-to-life. Do you understand that?

22 [SMITH:] Yes, ma'am.

23 [THE COURT:] And --

24 THE COURT:  Is it 85 percent or -- he has to serve -- I always get confused.

25 [PROSECUTOR:]  No. It -- if he were -- if you were to strike a prior, it will be 80 percent. *If you don't strike a prior, it's -- a minimum of 25 calendar years in addition to an indeterminate sentence.*

6

|   |               |                                                                                   |
|---|---------------|-----------------------------------------------------------------------------------|
| 1 | [THE COURT:]  | Do you understand that?                                                           |
| 2 | [SMITH:]      | Yes, ma'am.                                                                       |

RT 43-45 (emphasis added).

|   |               |                                                                                   |
|---|---------------|-----------------------------------------------------------------------------------|
| | [THE COURT:]  | Has anyone made any promises to you other than what we promised -- I promised you here today? And I didn't promise you very much. The only thing we promised is that we -- the district attorney is going to dismiss some of the charges, but it will still leave three of the burglaries and we really didn't promise you anything other than life in state prison. *Has anyone promised you anything else?* |
| | [SMITH:]      | *No, ma'am.*                                                                      |
| | [THE COURT:]  | All right. You understand the -- *your attorney is going to make a motion and try to get me to dismiss or to strike some of the prior convictions. But that's not a promise that I will do that. You understand that?* |
| | [SMITH:]      | *Yes, ma'am.*                                                                     |
| | [THE COURT:]  | *So when you come in for sentencing and I say no, I'm not striking anything, I'm not dismissing anything, you can't just turn around and say, gee, that's not what we agreed upon and I want to withdraw my plea. It's not going to work. Do you understand that?* |
| | [SMITH:]      | *Yes, ma'am.*                                                                     |

RT 52-53 (emphasis added).

Smith also submitted a declaration from his appellate counsel, who recounted a conversation with attorney Jacobs. Smith's appellate counsel declared that attorney Jacobs denied that she had misled Smith about the terms of the offer and denied that she made any promises to Smith. Attorney Jacobs viewed Smith's case as a "close case" regarding whether one of the prior strike convictions would be dismissed and said she had told Smith she hoped the court would "go our way" but did not promise that Smith would not receive a sentence under the Three Strikes Law. (Petition, Exh. 5, ¶ 3).

Smith does not reconcile the statements of his former counsel or Smith's own testimony at the plea colloquy with the declarations from him and his family. He does not explain why he agreed to the plea and told the court that no promises had been made if he was in fact promised that the judge would "go his way," strike at least one of the prior convictions, and give him a

7

1  determinate sentence. The declarations from Smith's family members also are not persuasive.
2  Smith's sisters stated they had attended all the court sessions (and his wife stated she had attended
3  some of the court appearances) and all claim to have been shocked when Smith received a 25 years
4  to life sentence. Like Smith himself, none of his family members explain how they could have
5  heard the plea colloquy – in which Smith repeatedly acknowledged no promise had been made to
6  him and he was subject to a sentence of 79 years to life – and nonetheless been shocked when a
7  25 years to life sentence was imposed. Moreover, there is no explanation of why his sister Susan
8  pleaded with the court at the Romero hearing not to sentence Smith to life imprisonment if she
9  was under the impression he had been promised a sentence of 5-7 years or 10-15 years. Compare
10 RT 69-70 with Petition, Exh. 4, ¶ 3. Finally, even if believed, the declarations from the family
11 members would be of limited value and could at most corroborate Smith's declaration because
12 each of the family-member declarations discusses what attorney Jacobs told that family member
13 rather than what attorney Jacobs told Smith himself.
14         During the plea colloquy Smith repeatedly acknowledged that no promises had been made
15 and specifically denied that any promise to dismiss a prior strike conviction had been made. Smith
16 also spoke at his Romero hearing--i.e., the hearing to determine whether any prior conviction
17 would be dismissed--and did not suggest that any promises had been made. Smith also did not
18 object or protest at the sentencing hearing when the court denied his motion to dismiss his prior
19 strike convictions and sentenced him to 25 years to life under three strikes. The record reveals
20 that, in addition to the plea colloquy, Smith and his family acknowledged that he might receive a
21 life sentence. Several letters were submitted for the court to consider during sentencing. Two of
22 the letters from Smith's family acknowledged that Smith might receive a life sentence under the
23 Three Strikes Law. One letter stated, "if they give him 3 serikes . . . thay don't have to tack he's
24 life if he did not do nothing." CT 355 (errors in original). Another family member wrote, "people
25 have been telling me you will ~~prombly~~ get life or 20 to 30 years in jail." CT 266 (strikeout in
26 original). Family members were also allowed to address the judge during the Romero hearing.
27 Smith's sister Susan stated, "All I want to say is instead of locking my brother up for the rest of
28

8

1 his life, please just give him a chance. . . " and "[d]on't lock him up for life, please, Your Honor."
2 RT 69-70.

3   The foregoing demonstrates that the sentence imposed was no greater than that to which
4 Smith agreed. The trial court specified and Smith agreed that he could be sentenced to a maximum
5 term of 79 years to life. The trial court specifically alerted Smith to the fact that although his
6 attorney would "try" to persuade the judge to dismiss one of Smith's priors, the judge made no
7 promises that she would do so. RT 53.

8   Smith offers no persuasive evidence that supports his assertions that he was misled by
9 counsel. Smith's declarations are insufficient to rebut the "strong presumption of verity" afforded
10 his solemn declarations in open court. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see
11 also Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir 1999) (finding habeas petitioner's alleged
12 "subjective" impressions insufficient to undermine his own statements at the plea colloquy);
13 Slevin v. United States, 71 F.Supp.2d 348, 356-58 (S.D.N.Y. 1999) (requiring some "objective
14 evidence" to support petitioner's self-serving allegations because convicted prisoner faces
15 tremendous incentives to fabricate allegations of misconduct in an attempt to avoid incarceration).
16

17   The record shows that Smith was accurately informed of the 79 years to life maximum
18 sentence that the court could impose. Smith's own statements in court show he understood he
19 could receive a 79 years to life sentence. The court advised Smith that if none of his strikes were
20 dismissed he could not decide "'that's not what we agreed upon and I want to withdraw my plea.'"
21 RT 53. Smith agreed, yet this is precisely what Smith has done in his habeas petition. When he
22 pled no contest, Smith acknowledged that he faced up to a life sentence and that there were no side
23 promises or threats prompting him to plead no contest. He now provides no explanation for the
24 discrepancy between the record and his allegations. A "disappointed hope for leniency does not,
25 without more, render a guilty plea invalid." Conley v. United States, 407 F.2d 45, 47 (9th.Cir.
26 1969).

27   Smith has not shown deficient performance by counsel and no prejudice resulted from
28

9

counsel's advice. Having made an independent review of the record, this court concludes that the state courts' rejection of Smith's claim was not an unreasonable application of clearly established federal law. See Himes v. Thompson, 336 F.3d at 853. Smith is not entitled to the writ.

**CONCLUSION**

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July _5_, 2005

                                      SUSAN ILLSTON
                                  United States District Judge

10